UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No.:

|  |  |
|---|---|
| MALGO, INC.,<br>MICHAEL GOLDSTEIN<br>　　　　　　Plaintiffs | )<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| PUREHD, LLC, | )<br>) |
| 　　　　　　Defendant | )<br>) |
| PUREHD, INC.,<br>SOLUTIONINC, LIMITED | )<br>)<br>) |
| 　　　　　　Interested Parties | )<br>) |

## VERIFIED COMPLAINT AND JURY DEMAND

The Plaintiffs, by and through undersigned Counsel, bring this Verified Complaint against the Defendant and seek actual damages on each count, multiple damages under M.G.L. Ch. 93A, along with costs and reasonable attorney's fees.

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(a)(2), as complete diversity exists between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), as the Defendant is domiciled in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

### PARTIES

3. Plaintiff Malgo, Inc. is a corporation organized under the laws of the State of Nevada with a principal place of business located at 7 Lefferts Court, East Brunswick, NJ 08816.

4. Plaintiff Michael Goldstein is an individual, residing at 7 Lefferts Court, East Brunswick, NJ 08816.

5. Defendant PureHD, LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business located at 29 Hudson Road, Suite 3200, Sudbury, Middlesex County, MA 01776, and Thomas Pullen, a citizen of Sudbury, MA, is the Member-Manager of Defendant PureHD, LLC.  Defendant is engaged in the business of integrating the services of DISH Network television services to hotels and other temporary living facilities.

6. Interested Party PureHD, Inc. ("the Parent") is a limited company organized under the laws of the Province of Nova Scotia with a principal place of business located at 1549 Birmingham Street, Halifax, Nova Scotia B3J 2J6.

7. Defendant PureHD, LLC is a wholly owned subsidiary of Interested Party PureHD, Inc.

8. Interested Party Solutioninc, Limited ("Solutioninc") is a limited company organized under the laws of the Province of Nova Scotia with a principal place of business located at 5692 Bloomfield Street, Halifax, Nova Scotia B3J 2J6. At all times relevant, Solutioninc was the Parent's majority shareholder

## FACTS

9. On or about November 10, 2019, Defendant's manager, one Thomas Pullen,[1] solicited the assistance of one Michael Goldstein to secure loan financing to effectuate the purchase,

---

[1] Upon information and belief, Thomas Pullen is also both a director and the president of the Parent and Member of Defendant LLC, and is domiciled in Massachusetts.

by the Defendant, of the ownership interest of the Parent's majority shareholder, Solutioninc.

10. Pullen also sought Goldstein's help in effectuating the purchase of the Parent's minority shareholder, Bradley Adams.[2]

11. The third, and final, shareholder of the Parent is and was the aforementioned Thomas Pullen.

12. Pullen desired to retain his ownership interest in the Parent, thereby becoming the majority/sole shareholder of the Parent through the stock redemption and, thereby, of the Defendant, therefore, it was agreed that the stock of Solutioninc and Adams would be redeemed by the Defendant so as to give Pullen the majority/sole shareholder status which he sought.

13. The Defendant represented to Goldstein that Solutioninc and Adams were both interested in redeeming their shares of the Parent and that they would both agree to and abide by reasonable, industry-standard stock purchase arrangements.

14. The Defendant further informed Goldstein that the Parent initially sought to recruit the services of an investment bank to advise and find purchasers to buy the whole company, however, Pullen advised that he had convinced the Parent to give Defendant an exclusive window to raise the money so as not to incur needless costs, fees and time spent associated with the retention of an investment bank.

15. The Defendant's accounting responsibilities, including preparation of financial statements, cash management, and general financial administration, were borne by the Parent.

---

[2] At all times relevant, Adams served as the Parent's Vice President of Operations and was Director of Parent.

16. Solutioninc, as majority shareholder of the Parent, required that Solutioninc's Chief Financial Officer, one Andrew G. MacDougall, also serve as the Chief Financial Officer of the Parent, with all accounting staff under his direct control in Nova Scotia.

**Defendant's Contracts with Malgo, Inc.**

17. Goldstein owned a 50% stake in Malgo, Inc., and subsequently offered its services to the Defendant to help effectuate the stock redemption.

18. On November 20, 2019, the Defendant agreed, via electronic mail, to pay Malgo a commission of three percent (3%) in fees and a further three percent (3%) in warrant coverage on the debt capital secured by Malgo to effectuate the stock redemption (hereinafter, "Malgo Contract One").

19. Simultaneously, the Defendant retained Malgo as a consultant to advise the Defendant on how best to structure the stock redemption, and prepare the Defendant for lender due diligence, (hereinafter "Malgo Contract Two").

20. The Defendant and Malgo agreed that Malgo would be paid a reasonable consulting fee, which consideration was wholly separate and independent from the consideration paid by the Defendant pursuant to Malgo Contract One.

21. In furtherance of Malgo Contract One, Malgo sought and retained Peers and Company, LLC to assist in raising capital for the redemption.

22. Malgo diligently performed its duties under both Malgo Contracts One and Two from November 21, 2019, through March 13, 2020.

23. On November 25, 2019, Pullen advised Malgo of his intentions to structure the stock redemption in such a way as to give Pullen majority and/or sole ownership of the Parent.

24. On January 2, 2020, the Defendant and Malgo agreed to a $1,500.00 per week consulting fee under Malgo Contract Two, the parties stipulated that such pay structure was to retroactively apply to the time period from November 21, 2019.

25. The Defendant and Malgo further stipulated that the Defendant would pay Malgo $10,000.00 in a lump sum payment in consideration for Malgo's performance under Malgo Contract Two.

26. On January 16, 2020, the Defendant and Solutioninc entered into a Letter of Intent for the Defendant to redeem Solutioninc's share in the Parent for a total of Four Million Two Hundred and Seventy Thousand Four Hundred and 00/100 ($4,270,400.00) dollars, which was roughly based on five times multiple earnings before tax for fiscal year 2020, with consummation of the redemption to occur on or before March 31, 2020.

27. The cost of redeeming Solutioninc's shares rendered the simultaneous or near-term redemption of Adams' entire share infeasible.

28. Malgo, while performing under Malgo Contract One, connected the Defendant with Decathlon Capital Partners, LLC ("Decathlon") who subsequently entered into a Letter of Intent to lend the Defendant Three Million and 00/100 ($3,000,000.00) dollars to redeem Solutioninc's shares in the Parent.

29. On January 25, 2020, the Defendant submitted a first draft of a share redemption agreement to Solutioninc.

30. On January 28, 2020, the Defendant submitted its first offer to Adams, which offer was made within the constraints of Decathlon's proposed financing terms.

31. On February 10, 2020, Decathlon's Managing Director, one Wayne Cantrell, visited the Massachusetts office of the Defendant as part of its industry-standard due diligence conducted prior to closing on its loan to the Defendant.

32. Also on February 10, 2020, Pullen paid Goldstein (who attended the due diligence meeting on behalf of Malgo), via a personal check, $10,000.00.

33. Despite the terms of Malgo Contract Two's requirement that Michael invoice the $10,000.00 be paid to Malgo, Inc. and not to Goldstein personally, and be paid by the Defendant and not by Pullen personally, in light of Pullen's statement that the Defendant authorized him to make a personal payment for which it promised to reimburse Pullen, Goldstein accepted the payment on behalf of Malgo.

34. On or about February 15, 2020, the Defendant and Decathlon negotiated a loan agreement.

35. Said agreement's performance was contingent on resolutions passed by the Parent's board of directors and shareholders authorizing the redemption, and the successful execution of a redemption agreement between the Defendant and Solutioninc, as well as the completion of the raising of sufficient additional capital so as to effectuate the redemption within industry standards.

36. By March 10, 2020, Pullen and Malgo secured commitments sourcing sufficient additional capital to effectuate the redemption. Pullen raised some capital from a third-party entity under his control, and Malgo sourced an additional Five Hundred Thirty-Seven Thousand Five Hundred and 00/100 ($537,500.00) dollars, bringing Malgo's total raised capital to Three Million Five Hundred Thirty-Seven Thousand Five Hundred and 00/100 ($3,537,500.00) dollars.

37. On March 2, 2020, Adams submitted his final proposal. Said proposal was unworkable within the terms and conditions of the Decathlon financing.

38. Throughout their discussions with the Defendant, Adams and his attorney refused to negotiate within the constraints of the Decathlon financing.

39. Adams' attorney also secured Canadian legal representation to challenge the stock redemption of the terms and conditions were not to Adams' liking, notice to Decathlon of a planned lawsuit relative to the stock redemption would certainly scuttle the Decathlon financing, thus terminating the stock redemption.

40. As of March 7, 2020, Solutioninc, by and through its CFO and related accounting department, refused to warrant and guarantee the accuracy of the Defendant's financial statements, which statements Solutioninc, by and through its CFO and related accounting department, administered on behalf of the Parent and of the Defendant.

41. A warranty and guarantee of the accuracy of financial statements is an industry-standard, commercially reasonable requirement to acquire financing from an investment fund, such as Decathlon.

42. Indeed, because the valuation and cash flow analysis by an investment fund of a prospective borrower (which determines the size of the loan for which the borrower qualifies) is based on the borrower's financial performance, the validity of financial records associated therewith is critical to the transaction.

43. On March 11, 2020 Decathlon expressed its frustration with the delays in concluding the share redemption agreement with Solutioninc.

44. Since the Defendant's submission of its first draft of the share redemption agreement on January 25, 2020, Solutioninc ignored many of the Defendant's attempts to meet Decathlon's stated deadlines.

45. On March 12, 2020, due to the unreasonable delays in concluding the share redemption agreement with Solutioninc, Decathlon pulled out of the deal.

46. On March 13, 2020, Malgo invoiced the Defendant for the remainder of its consulting fees, in the amount of Fifteen Thousand Five Hundred and 00/100 ($15,500.00) dollars, as well as expenses, in the amount of One Hundred Ninety-Eight and 92/100 ($198.92) dollars, pursuant to the terms of Malgo Contract Two.

47. To date, said invoice has not been paid by the Defendant.

48. Malgo has further received no payment from the Defendant pursuant to Malgo Contract One.

## COUNT I
## BREACH OF CONTRACT

49. Plaintiffs Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through forty-eight of this Complaint as if expressly rewritten and set forth herein.

50. Plaintiff Malgo, Inc. had two separate contracts with the Defendant, each supported by independent consideration, and on each of which the Defendant has materially failed to perform.

51. Malgo Contract One specified that Plaintiff Malgo was due a commission of three percent (3%) in fees and a further three percent (3%) in warrant coverage on the debt capital secured by Plaintiff Malgo to effectuate the stock redemption.

52. Plaintiff Malgo successfully secured Three Million Five Hundred Thirty-Seven Thousand Five Hundred and 00/100 ($3,537,500.00) dollars in debt capital to effectuate the redemption.

53. The capital was secured, letters of intent entered into, and the transaction was ready to proceed.

54. However, the transaction failed, through no fault of Plaintiff Malgo, but rather because the Defendant refused and failed to follow common industry practice, such as the warrant and guarantee of the accuracy of financial records, providing prompt access to lender's requests and/or due diligence, and to generally negotiate in good faith.

55. On March 10, 2020, Plaintiff Malgo fully performed on Malgo Contract One.

56. Plaintiff Malgo is therefore owed a fee of $106, 125.00 and warrant coverage in the amount of $106,125.00.

57. Plaintiff Malgo submits that failure to remit the promised consideration upon the completion of the condition precedent thereto constitutes a material breach of Malgo Contract One.

58. Plaintiff Malgo likewise fully performed on Malgo Contract Two, and is therefore, entitled to full payment of the consideration owed to it.

59. Plaintiff Malgo submits that failure to fully remit payment after accepting the performance of services due under a contract is a material breach thereof.

WHEREFORE, the Plaintiffs Malgo, Inc. and Michael Goldstein demand a judgment and decree ordering the Defendant to pay all monies and other consideration presently due and owing to Plaintiffs, as well as reasonable costs and attorney's fees.

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

60. Plaintiffs  Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through fifty-nine of this Complaint as if expressly rewritten and set forth herein.

61. Under Massachusetts law, covenants of good faith and fair dealing are read into contracts and require parties to act in good faith so as not to impair the other party's rights to the fruits of the contract. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 471, 474 583 N.E.2d 806 (1991).

62. The Defendant has exhibited a pattern of bad faith conduct, as alleged above, including, but not limited to: (1) its refusal to comply with industry-standard requests from Decathlon to warrant and guarantee the accuracy of its financial records; and (2) refusal to pay the Plaintiff for services performed after agreeing to do so in valid contracts executed prior to the commencement of said services.

63. The Defendant's bad faith conduct actually and proximately impaired the Plaintiff's rights to the fruits of their respective contracts.

WHEREFORE, Plaintiffs Malgo, Inc. and Michael Goldstein demand a judgment and decree ordering the Defendant to pay damages of an amount proportionate to the degree of its bad faith conduct throughout its dealings with the Plaintiffs, as well as costs and reasonable attorney's fees.

**COUNT III**
**QUANTUM MERUIT**

64. Plaintiffs  Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through sixty-three of this Complaint as if expressly rewritten and set forth herein.

65. Plaintiffs  Malgo and Michael Goldstein performed services for PureHD, LLC for which they have not received payment.

66. Plaintiffs  Malgo and Michael Goldstein are therefore entitled to collect reasonable payment for same under the theory of Quantum Meruit.

WHEREFORE, the Plaintiffs  Malgo, Inc. and Michael Goldstein demand a judgment and decree ordering the Defendant to pay a reasonable fee for their services performed for which the Plaintiffs  have not been compensated, as well as reasonable costs and attorney's fees.

## COUNT IV
## DECLARATORY JUDGMENT

67. Plaintiffs Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through sixty-six of this Complaint as if expressly rewritten and set forth herein.

68. Plaintiffs  request, pursuant to 28 U.S.C. § 2201(a), that this Honorable Court issue a Declaratory Judgment that the Defendant is in material breach of its contracts with the Plaintiff based on the conduct alleged herein.

WHEREFORE, the Plaintiffs  Malgo, Inc. and Michael Goldstein demand a judgment and decree on this Count in addition to reasonable costs and attorney's fees.

## COUNT V
## VIOLATIONS OF MASS. GEN. LAWS CH. 93A § 11

69. Plaintiffs  Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through sixty-eight of this Complaint as if expressly rewritten and set forth herein.

70. At all times relevant hereto, Plaintiffs  and Defendant PureHD, LLC, were persons engaged in trade or business as defined in Mass. Gen. Laws ch. 93A §§ 1(a) and 1(b).

71. The Plaintiffs submit that the consummation of a contract and then Defendant's unfair and deceptive refusal and failure to perform thereunder constitutes unfair or deceptive conduct in violation of Mass. Gen. Laws ch. 93A § 2.

72. The Plaintiff submits that the conduct alleged herein by the Defendant constitutes unfair or deceptive conduct.

73. As has been more fully described above, the actions and transactions constituting unfair or deceptive acts occurred primarily and substantially within the Commonwealth of Massachusetts.

74. The Plaintiff finally submits that the conduct alleged herein by the Defendant was a willful and knowing violation of Mass. Gen. Laws ch. 93A.

WHEREFORE, Plaintiffs Malgo, Inc.and Michael Goldstein demand a judgment and decree that the Defendant willfully and knowingly violated Mass. Gen. Laws ch. 93A and that any damages awarded in this action be doubled or trebled pursuant to Mass. Gen. Laws ch. 93A § 11.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

75. Plaintiffs Malgo, Inc. and Michael Goldstein repeat and reaver paragraphs one through seventy-four of this Complaint as if expressly rewritten and set forth herein.

76. The Defendant made clear and unequivocal promises that it would honor the commercially reasonable and standard covenants expressed in the contracts detailed herein.

77. In reliance on these representations, the Plaintiffs expended great time and effort to undertake its duties pursuant to the contracts with the highest degree of skill and effectiveness.

78. The Plaintiffs fully performed on their obligations in reliance on the Defendant's representation that it would honor its commitments.

79. This reliance on the clearly negligent misrepresentations made by the Defendant is the actual and proximate cause of the Plaintiff's damages, including lost income reasonably expected under the contracts described herein.

WHEREFORE, Plaintiffs  Malgo, Inc. and Michael Goldstein respectfully pray that this Court enter an Order:

1.  Declaring the Defendant to be in material breach of Malgo Contract One and Malgo Contract Two;

2.  Ordering the Defendant to pay all sums presently due and owing to the Plaintiffs under each contract;

3.  Ordering the Defendant to pay reasonable damages, fees, and attorney costs to the Plaintiffs; and

4.  Doubling or Trebling the amount of awarded damages pursuant to Mass. Gen. Laws ch. 93A § 11; and

5.  All other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**AND FURTHER, THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS AND ISSUES SO TRIABLE PURSUANT TO THE SEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND FED. R. CIV. P. 38(b) AS WELL AS UNDER ANY OTHER APPLICABLE LAWS**

## VERIFICATION

I, Michael Goldstein, am of lawful age and swear under the pains and penalties of perjury that I am an authorized representative of Plaintiff,  Malgo, Inc. and that I have read the foregoing complaint and know the contents thereof and that the material facts therein set forth are all the material facts known to me, and are true, except for those facts set forth that are based on information and belief.

Michael Goldstein, Authorized Representative of
Malgo, Inc., and individually.

Signed and dated this 13th day of May, 2020.

14

Respectfully submitted,

The Plaintiffs,
Malgo, Inc.
Michael Goldstein

By their attorneys,

Richard S. Ravosa, Esquire
BBO No. 635846
attorneyravosa@gmail.com
Matthew M. Hamel, Esquire
BBO No. 697773
mhamel@ravosalaw.com
Ravosa Law Offices, P.C.
300 Commercial Street, Suite 2
Boston, MA 02109
Tel: (617) 720-1101
Fax: (617) 720-1104

Dated: May 13th, 2020