UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MALGO, INC. and<br>MICHAEL GOLDSTEIN,<br>    Plaintiffs<br><br>v.<br><br>PUREHD LLC,<br>    Defendant<br><br>and<br><br>PUREHD, LLC<br>    Third-Party Plaintiff/<br>    Defendant-in-Counterclaim<br><br>v.<br><br>THOMAS PULLEN<br><br>    Third-Party Defendant/<br>    Plaintiff-in-Counterclaim/<br>    Fourth-Party Plaintiff<br>v.<br><br>SOLUTIONINC LTD., GLEN LAVIGNE, and<br>ANDREW MACDOUGALL,<br>    Fourth-Party Defendants | Civil Action No. 1:20-cv-40055-PBS |

**FOURTH-PARTY COMPLAINT AND JURY DEMAND**
**OF THOMAS PULLEN**

Fourth-Party Plaintiff Thomas Pullen ("Pullen") asserts this Fourth-Party Complaint against Fourth-Party Defendants SolutionInc. Ltd. ("SIL"), Glen Lavigne ("Lavigne"), and Andrew MacDougall ("MacDougall"), as follows:

**Jurisdiction and Venue**

1. The Court has subject matter jurisdiction over the Fourth-Party claims asserted herein, which form part of, and arise out of, the same nucleus of facts, case, and controversy as the claims asserted against PureHD, and the third-party claims asserted by PureHD against Pullen, all pursuant to 28 U.S.C. §§ 1332 and 1367.

2. The Court has personal jurisdiction over SIL, which is a Canadian company doing business in the Commonwealth of Massachusetts, and which has indirectly asserted third-party claims against Pullen by way of PureHD, in which SIL directly or indirectly has majority ownership and control.

3. The Court has personal jurisdiction over Lavigne, who is an individual residing in Canada who is doing business in the Commonwealth of Massachusetts, and who has indirectly asserted third-party claims against Pullen by way of PureHD, a company in which Lavigne directly or indirectly has ownership and control.

4. The Court has personal jurisdiction over MacDougall, who is an individual residing in Canada who is doing business in the Commonwealth of Massachusetts, and who has indirectly asserted third-party claims against Pullen by way of PureHD, a company in which he directly or indirectly has control.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391(1) and (2).

**Parties**

6. Fourth-Party Plaintiff Thomas Pullen is an individual with a usual residence in Sudbury, Massachusetts.

7. Fourth-Party Defendant SIL is a Canadian company doing business in the Commonwealth of Massachusetts.

8. Fourth-Party Defendant Lavigne is an individual residing in Canada who is doing business in the Commonwealth of Massachusetts.

9. Fourth-Party Defendant MacDougall is an individual residing in Canada who is doing business in the Commonwealth of Massachusetts.

**Underlying Facts**

10. PureHD is a wholly owned subsidiary of PureHD Inc. ("the Parent Company").

11. The shareholders of the Parent Company are SolutionInc Limited ("SIL"), Pullen, and Bradley Adams ("Adams").

12. On information and belief, Lavigne is an owner of SIL, and he and MacDougall are officers, directors, or manager(s) of SIL and are authorized to act on SIL's behalf with respect to matters involving the Parent Company and/or PureHD.

13. The Board of Directors of the Parent Company and PureHD are Adams, Lavigne, MacDougall, and Pullen.

14. The Officers of the Parent Company and PureHD are MacDougall as Chair and CFO, Pullen as President, Lavigne as Secretary, and Adams as Vice-President and Director of Operations.

15. As a function of being Officers and Directors of the Parent Company and PureHD, as well as pursuant to the Shareholders' Agreement for the Parent Company and PureHD, and otherwise, MacDougall, Pullen, Lavigne, and Adams all owe fiduciary duties to the Parent Company and PureHD.

16. In or about the Fall of 2019 and following, SIL, Lavigne, MacDougall, and Pullen discussed the possibility of Pullen purchasing the shares in the Parent Company owned by

SIL, which would allow Pullen to own and control a majority of the Parent Company and thereby control PureHD.

17. Throughout this process, SIL, Lavigne, and MacDougall understood Pullen would be using financing to fund the proposed purchase, given the large size and type of the proposed transaction.

18. To assist him with raising the necessary financing, Pullen initially and in his individual capacity retained Plaintiff Malgo and/or Michael Goldstein.

19. The initial agreement between Pullen and Malgo and/or Michael Goldstein was entered into in Pullen's individual capacity.

20. On or about January 14, 2020, Lavigne on behalf of SIL and Pullen entered into an agreement captioned "SolutionInc Limited and Pullen Agreement to Purchase All PureHD Inc. Shares," which agreement contained 17 separate points of agreement ("the 17-Point Plan").

21. As part of the 17-Point Plan, and acting pursuant to their lawful authority, Pullen and SIL bound PureHD to certain duties and obligations concerning the proposed purchase, including but not limited to the obligation to pay Malgo and/or Michael Goldstein.

22. Point 11 of the 17-Point Plan provides: "All transaction costs including closing and legal costs for both parties will be paid on an interim basis from working capital of PureHD so that both parties are not out of pocket until the closing or failure to close."

23. Point 11 of the 17-Point Plan further provides: "In the event it [the proposed purchase] fails to close as contemplated by item 4 above, except as a result of refusal (whether by action or inaction) of SolutionInc to close, the costs of Tom Pullen shall be a debt owing to PureHD;"

24. Point 14 of the 17-Point Plan provides: "Detailed share purchase agreement shall be signed as soon as possible and must be signed by 2-28-20 or such later date as the parties mutually agree, acting reasonably;"

25. As evidenced by the 17-Point Plan, as of January 14, 2020 SIL, Lavigne, MacDougall, and Pullen were in agreement as to the material terms by which the Parent Company would sell, and Pullen would acquire, SIL's shares in the Parent Company, thus transferring control of PureHD to Pullen.

26. As shareholders, owners, officers, and directors of the Parent Company, and by extension of PureHD, Lavigne, MacDougall, and Pullen owed fiduciary duties and a duty of good faith and fair dealing to the Parent Company and PureHD to effectuate the proposed purchase of SIL's shares by Pullen, on which they had agreed as to the material terms.

27. As part of Pullen's efforts to obtain financing, Pullen's lender required some form of reasonable representation and warranty to the effect that the financials of the Parent Company and/or PureHD were generally accurate. The request of Pullen's lender in this regard was normal, typical, and reasonable in a transaction of the type and size anticipated by the parties and outlined in the 17-Point Plan.

28. Separate and apart from Pullen's efforts to obtain financing for the proposed purchase, the material finances of the Parent Company and PureHD are, were, and always have been a matter within the control of SIL, Lavigne, and MacDougall.

29. It always has been and remains the usual practice and course of conduct at the Parent Company and PureHD that all financialial reportingand financial documents are prepared and maintained by SIL, Lavigne, and/or MacDougall in SIL's office, and not by Pullen.

30. All financial reports for the Parent Company and/or PureHD are produced and stored at SIL's office in Canada.

31. Separate and apart from Pullen's efforts to obtain financing for the proposed purchase, Lavigne, MacDougall, and/or SIL expressly required Pullen to agree and confirm he never had, and never would, provide any material representation or warranty as to the accuracy of the financial statements of either the Parent Company or PureHD during the due diligence process.

32. In the case of Pullen's lender, however – despite the usual practice and course of conduct of MacDougall, Lavigne, and/or SIL being responsible for the financial affairs of the Parent Company and PureHD, and for preparing and maintaining the financial statements of the Parent Company and/or PureHD LLC - Lavigne, MacDougall and SIL refused to provide any representations or warranties whatsoever to Pullen's lender.

33. To the contrary, Lavigne, MacDougall, and SIL insisted that Pullen's lender affirmatively confirm it had not relied and would not rely, in any capacity, on the financial statements of the Parent Company and/or PureHD.

34. At the time, Pullen and his counsel attempted to resolve the serious problems created by Lavigne, MacDougall, and/or SIL's refusal to provide any type of reasonable representation or warranty by suggesting that Lavigne, MacDougall, and/or SIL identify for Pullen's lender problematic areas in the financial statements. But Lavigne, MacDougall, and SIL refused, again insisting on removing any and all reliance on the financial statements.

35. As a direct consequence of Lavigne, MacDougall, and/or SIL's refusal to provide any form of representation or warranty for the Parent Company and/or PureHD, Pullen's lender backed out and Pullen's financing and the proposed purchase failed.

36. Lavigne and/or SIL, as the direct or indirect majority shareholder of the Parent Company and PureHD, and/or Lavigne and MacDougall, as officers, directors or managers of PureHD, refused to allow or authorize PureHD to pay Plaintiffs Malgo and/or Michael Goldstein from the working capital of PureHD, as had been agreed upon in Point 11 of the 17-Point Plan.

37. As a result of Lavigne, MacDougall, and/or SIL's actions and/or failures to act, PureHD failed to pay Plaintiffs Malgo and/or Michael Goldstein from the working capital of PureHD, as provided in Point 11 of the 17-Point Plan, thus triggering this lawsuit.

38. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, the proposed purchase – as it had been agreed upon by the owners, officers, and directors of the Parent Company and PureHD – failed.

39. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, Pullen was wrongly charged with personal responsibility for significant legal fees incurred in this action.

40. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, the legal fees incurred by PureHD have not been properly controlled or managed, and to the contrary have been encouraged to accrue.

41. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, Pullen was wrongfully stripped of his title of Member/Manager of PureHD.

42. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, significant legal bills which were properly due and owing from Lavigne and MacDougall's company, SIL, instead were wrongly assigned to PureHD for payment.

43. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, Lavigne, MacDougall, and SIL have refused to allow a $400,000 escrow payment properly belonging to PureHD to be returned to PureHD.

44. As a further result of Lavigne, MacDougall, and/or SIL's actions and failures to act, Lavigne, MacDougall, and SIL remain in the unlawful possession of $268,751 of PureHD's funds, which funds were transferred to SIL contingent upon the condition that SIL, MacDougall, and Lavigne would abide by the 17-Point Plan.

**Count I**

(Breach of Contract v. SIL, Lavigne, and MacDougall)

45. Pullen restates and realleges Paragraphs 1 through 44 as if set forth separately herein.

46. The 17-Point Plan is a valid and voluntary agreement entered into by and between SIL, by and through its agent, Lavigne, and Pullen.

47. On information and belief, MacDougall also was in agreement with the terms of the 17-Point Plan.

48. As evidenced and memorialized by the 17-Point Plan, it was agreed that SIL would sell, and Pullen would purchase, all of SIL's shares in the Parent Company on the material terms set forth therein, thus allowing Pullen to assume majority of control of both the Parent Company and PureHD.

49. Also pursuant to the 17-Point Plan, it was agreed that, *inter alia*, PureHD would assume all closing and legal and related costs in connection with the proposed purchase, including

if the proposed purchase failed due to the failure of SIL to close, either through action or inaction.

50. The 17-Point Plan was supported by sufficient and proper consideration, was properly executed, and represents a binding agreement and contract between the parties.

51. The proposed purchase did in fact fail due to the refusal of SIL, Lavigne and/or MacDougall to close, through their collective action or inaction; i.e., due to Lavigne, MacDougall, and/or SIL's refusal to provide any reasonable representation or warranty as to the accuracy of the financial statements of the Parent Company and/or PureHD as prepared and maintained by Lavigne, MacDougall, and/or SIL, despite this being a commercially necessary, reasonable, and typical request by Pullen's lender for a transaction of this size and type.

52. As a result of SIL, Lavigne, and/or MacDougall's refusal to close, through their collective action or inaction, the closing costs and expenses of the proposed purchase, including but not limited to the costs of Plaintiffs Malgo and/or Michael Goldstein, were and remain a valid and proper obligation of PureHD.

53. As a further result of the acts and omissions described herein, SIL, Lavigne, and MacDougall have breached the terms of the 17-Point Plan and their agreement with Pullen to sell SIL's shares in the Parent Company, and have instead caused PureHD to wrongfully sue Pullen, thus causing significant and unnecessary damages and legal fees to both PureHD and Pullen in an amount to be determined.

54. Damages caused by the breaches of contract of SIL, Lavigne, and MacDougall in connection with the proposed purchase, as evidenced by the 17-Point Plan, include but are not limited to: the failure of the proposed purchase; unpaid fees and costs to Plaintiffs

Malgo and Michael Goldstein; legal fees wrongfully assigned to Pullen; excessive legal fees caused or approved by SIL, Lavigne, and MacDougall; the illegal taking of Pullen's role as Manager of PureHD; illegally assigning SIL's legal fees to PureHD; the refusal to release the $400,000 escrow payment to PureHD; the failure to return the $268,751 conditional payment by PureHD; and other damages of a nature and amount to be determined.

55. As a result of PureHD's breach of the 17-Point Plan, and the resulting failure of the proposed purchase, Pullen has suffered a variety of damages in an amount to be determined.

### Count II

(Breach of Implied Covenant of Good Faith and Fair Dealing

v. SIL, Lavigne, and MacDougall)

56. Pullen restates and realleges Paragraphs 1 through 55 as if set forth separately herein.

57. The contracts and agreements between SIL, Lavigne, MacDougall and Pullen, as evidenced in the 17-Point Plan and otherwise, include an implied covenant of good faith and fair dealing to the effect that the parties thereto will work in good faith to effectuate the intentions and purposes of their agreements.

58. By and through the conduct described above, SIL, Lavigne, and MacDougall have breached their implied covenants of good faith and fair dealing.

59. As a result of their breaches of the implied covenant of good faith and fair dealing, SIL, Lavigne, and MacDougall have caused damages including not limited to: the failure of the proposed purchase; unpaid fees and costs to Plaintiffs Malgo and Michael Goldstein; legal fees wrongfully assigned to Pullen; excessive legal fees caused or approved by SIL,

Lavigne, and MacDougall; the illegal taking of Pullen's role as Manager of PureHD; illegally assigning SIL's legal fees to PureHD; the refusal to release the $400,000 escrow payment to PureHD; the failure to return the $268,751 conditional payment by PureHD; and other damages of a nature and amount to be determined.

## Count III

(Breach of Fiduciary Duty v. Lavigne, MacDougall)

60. Pullen restates and realleges Paragraphs 1 through 59 as if set forth separately herein.

61. By and through their roles as shareholders, officers, and/or directors of the Parent Company and PureHD, Lavigne and MacDougall owe fiduciary duties to the Parent Company and Pure HD.

62. By and through their actions and failures to act, as set forth above, Lavigne and MacDougall have breached their fiduciary duties to the Parent Company and PureHD.

63. As a direct result of their breaches of fiduciary duty, Lavigne and MacDougall have caused damages to Pullen, including but not limited to: the failure of the proposed purchase; unpaid fees and costs to Plaintiffs Malgo and Michael Goldstein; legal fees wrongfully assigned to Pullen; excessive legal fees caused or approved by SIL, Lavigne, and MacDougall; the illegal taking of Pullen's role as Manager of PureHD; illegally assigning SIL's legal fees to PureHD; the refusal to release the $400,000 escrow payment to PureHD; the failure to return the $268,751 conditional payment by PureHD; and other damages of a nature and amount to be determined.

## COUNT IV

(Intentional Interference with Contractual Relations)

64. Pullen restates and realleges Paragraphs 1 through 63 as if set forth separately herein.

65. A valid contract existed between Pullen and his lender, whereby the lender would provide financing for the proposed purchase.

66. SIL, Lavigne, and MacDougall were aware of the contractual relationship between Pullen and his lender.

67. By and through the conduct described herein, SIL, Lavigne, and MacDougall acted intentionally and improperly to interfere with the contractual relationship between Pullen and his lender, and to deny Pullen the benefit of that relationship.

68. As a result of the intentional and improper interference of SIL, Lavigne, and MacDougall, Pullen lost the benefit of his contractual relationship with his lender and the proposed purchase failed.

69. As a direct result of their intentional interference with Pullen's contractual relationship with his lender, Lavigne and MacDougall have caused damages to Pullen, including but not limited to: the failure of the proposed purchase; unpaid fees and costs to Plaintiffs Malgo and Michael Goldstein; legal fees wrongfully assigned to Pullen; excessive legal fees caused or approved by SIL, Lavigne, and MacDougall; the illegal taking of Pullen's role as Manager of PureHD; illegally assigning SIL's legal fees to PureHD; the refusal to release the $400,000 escrow payment to PureHD; the failure to return the $268,751 conditional payment by PureHD; and other damages of a nature and amount to be determined.

## Prayers for Relief

WHEREFORE, Pullen respectfully requests that the Court enter judgment in Pullen's favor on his Fourth-Party claims, and further award the following relief:

a) Damages in an amount to be determined for harms and losses caused to Pullen by Fourth-Party Defendants' breaches of their contractual obligations, their breaches of the implied covenant of good faith and fair dealing, their breaches of their fiduciary duties, and their intentional interference with Pullen's contractual relationships;

b) Prejudgment and post-judgment interest on Pullen's damages;

c) An award of Pullen's attorney's fees, costs, and expenses incurred in connection with this action; and

d) All other relief the Court deems fair, just, proper, and equitable.

**THOMAS PULLEN REQUESTS A JURY TRIAL ON ALL CLAIMS SO TRIABLE**

Respectfully submitted,

THOMAS PULLEN,

By his attorneys,

/s/ Benjamin D. Stevenson, Esq.
Benjamin D. Stevenson (BBO# 638121)
Peter J. Barrett, Jr. (BBO# 641626)
Stevenson Barrett LLP
21 Merchants Row, 5th Floor
Boston, MA 02109
bstevenson@stevensonbarrett.com
pbarrett@stevensonbarrett.com
(617) 330-5005

## **Certificate of Service**

I, Benjamin D. Stevenson, Esq., an attorney, hereby certify that I have filed the aforementioned document via Electronic Case Filing with the United States District Court of Massachusetts which sent notification to all counsel of record on this 24th day of March, 2021.

/s/ Benjamin D. Stevenson, Esq.